IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| F.H.G. CORPORATION, a Florida corporation, d/b/a CAPSTONE NUTRITION,<br><br>      Plaintiff,<br>v.<br><br>GREEN WAVE, INC., a California corporation,<br><br>      Defendant. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO CHANGE VENUE**<br><br>Case No. 1:16-cv-00147-JNP<br><br>District Court Judge Jill N. Parrish |

Before the court is Defendant Green Wave, Inc.'s Motion to Change Venue pursuant to 28 U.S.C. § 1404(a). (Docket No. 8).[1]

## **BACKGROUND**

This lawsuit arises out of a contractual dispute between a supplier of raw materials for nutritional products and a manufacturer of nutritional supplements. The supplier, Green Wave, Inc. ("Green Wave"), is a California corporation with its principal place of business in La Mirada, California. Green Wave imports raw ingredients for dietary supplements, foods, drinks, cosmetics, and pet products from China and other locations, and then sells those ingredients to

---

[1] In its reply brief, Green Wave objects to the court's consideration of a declaration by Craig Taylor and associated exhibits filed by Capstone with its memorandum in opposition to the instant Motion. (Docket No. 21, at 8–11). The basis of Green Wave's objection is Federal Rule of Evidence 408. It is not clear to the court that the Federal Rules of Evidence actually apply to preliminary and non-dispositive matters such as the instant Motion. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351–52 (2011) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676–677 (7th Cir. 2001)) ("The necessity of touching aspects of the merits in order to resolve preliminary matters, *e.g.*, jurisdiction and venue, is a familiar feature of litigation."). Indeed, Rule 408, which deals with the admissibility of evidence regarding settlement negotiations, seems particularly focused on the introduction of such evidence *at trial* or some other dispositive proceeding. *See EEOC v. Gear Petroleum, Inc.*, 948 F.2d 1542, 1546 (10th Cir. 1991) ("The philosophy of the Rule is to allow the parties to drop their guard and to talk freely and loosely without fear that a concession made to advance negotiations will be used *at trial*." (emphasis added)). In any event, this Motion does not call for any determination regarding "the validity or amount of a disputed claim"—the only question before the court is the convenience of the current venue. *See* FED. R. EVID. 408(a); *id.* 408(b) ("The court may admit this evidence for another purpose . . . ."). Accordingly, the objection is OVERRULED.

manufacturers across the United States. The company maintains warehouses in both La Mirada, California and Edison, New Jersey.

The manufacturer, F.H.G. Corporation, operating as Capstone Nutrition ("Capstone"), is a Florida corporation with its principal place of business in Ogden, Utah.[2] Capstone manufactures nutritional supplements and sports drinks for sale to distributors throughout the United States. Until early last year, Capstone maintained manufacturing facilities and offices in both Utah and Tennessee. After recapitalization in April 2016, the company divested itself of its Tennessee facilities and relocated its entire manufacturing operation, staff, and corporate structure to Utah.

On June 15, 2015, Capstone ordered a significant amount of agmatine sulfate, a common ingredient in certain nutritional supplements, from Green Wave. Green Wave purchased the requested ingredient from a "separate but affiliated entity" known as Gulin Bio located in Shanghai, China. (Docket No. 8, at 3). Gulin Bio, in turn, procured the product from another Chinese supplier, known as Chang Zhou Aide Biology Technology Company ("Chang Zhou").

Once the ingredient arrived in the United States, it was processed by Green Wave in its California and New Jersey warehouses. Capstone representatives picked up 875 kilograms of the ingredient from the California warehouse and 750 kilograms from the New Jersey warehouse. Capstone then used the ingredient to manufacture a powdered nutritional supplement at its facilities in Tennessee and Utah. Capstone sold the completed product to a Colorado-based distributor known as MusclePharm. Shortly after receipt of the product, MusclePharm notified Capstone that its own quality control testing of the product had detected traces of 1,3 dimethylbutylamine ("DMBA"), a substance banned by the U.S. Food and Drug Administration

---

[2] The court notes that the complaint erroneously describes F.H.G. as "a Delaware corporation," (Docket No. 2, at 1), but it appears the company is in fact incorporated under the laws of Florida, (*See* Docket No. 9-1, at 2).

and many major sporting organizations. As the presence of DMBA rendered the product unsaleable, MusclePharm returned the entire shipment to Capstone without payment. Capstone soon completed additional testing, which confirmed the presence of DMBA and allegedly identified the ingredient supplied by Green Wave as the source of the adulteration. The adulterated product was stored at Capstone's facilities in Tennessee until sometime in early 2016, when it was moved to Capstone's Utah warehouse as part of Capstone's recapitalization.

Capstone filed an action in diversity against Green Wave in the District of Utah on October 6, 2016. (Docket No. 2). Capstone's complaint alleges that Green Wave breached certain warranties and contractual obligations by supplying the purportedly tainted ingredient and seeks $1.3 million in damages. (*Id.*). On December 5, 2016, Green Wave filed the instant Motion seeking a transfer of the action to the Central District of California pursuant to 28 U.S.C. §1404(a). (Docket No. 8). On January 7, 2017, Capstone filed its memorandum in opposition to the Motion. (Docket No. 14). Green Wave replied on January 30, 2017. (Docket Nos. 20, 21). At the request of Green Wave, oral argument was held on the Motion June 19, 2017. (Docket No. 25). The court now considers the arguments of the parties under jurisdiction granted by 28 U.S.C. § 1332(a).

## **DISCUSSION**

As explained above, Green Wave requests transfer of this case to the Central District of California pursuant to 28 U.S.C § 1404(a). Under that section, this court "may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C § 1404(a). However, the court may make such an order only upon a showing that "the convenience of parties and witnesses" and "the interest of justice" justify transfer. *See id.*; *Atl. Marine Const. Co. v. U.S. Dist. Court*, 134 S. Ct.

568, 580 (2013) (explaining that § 1404(a) codified "the doctrine of *forum non conveiens* for the subset of cases in which the transferee forum is within the federal court system"). Thus, any party moving for a transfer under § 1404(a) must clearly demonstrate "that: (1) the transferee court is a proper forum in which the action could have been brought originally; and (2) the transfer will enhance the convenience of the parties and witnesses, and is in the interest of justice." *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1205 (D. Utah 2014) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616, 634 (1964)).

Here, neither party disputes that the Central District of California is an appropriate transferee forum under § 1404(a). Accordingly, the court need only evaluate whether the requested transfer will materially "enhance the convenience of the parties and witnesses, and is in the interest of justice." *See id.* Again, "[t]he 'party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient.'" *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)); *see also Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967). In evaluating the relative inconvenience of this forum and the interest of justice, the court must consider

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious[,] and economical.

*Emp'rs Mut. Cas. Co.*, 618 F.3d at 1167 (brackets omitted) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)). The parties here focus their arguments on (1) the weight accorded Capstone's choice of forum; (2) the accessibility of

4

witnesses and other sources of proof in Utah and California; (3) the relative cost of making necessary proof in each forum; and (4) the relative congestion of court dockets in each forum. The court addresses each of these factors below and concludes that the balance of factors weigh decidedly against transfer of this case to the Central District of California.

## I. PLAINTIFF'S CHOICE OF FORUM

The court finds that the first factor—the plaintiff's choice of forum—weighs heavily against transfer. "Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168 (brackets and quotations omitted) (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)). Thus, the court must normally accord "great weight" to the plaintiff's choice of forum. *KCJ Corp. v. Kinetic Concepts, Inc.*, 18 F. Supp. 2d 1212, 1214 (D. Kan. 1998). But, "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum," the court treats plaintiff's choice of forum with significantly less deference—assigning it "little weight" in the balance of factors. *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168 (quotations omitted) (quoting *Cook v. Atchison, Topeka & Santa Fe. Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)).

Here, Green Wave argues that "the facts giving rise to the lawsuit have no material relation or significant connection" to Utah, and therefore Capstone's choice to sue in this forum is entitled to "little weight." *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168. Green Wave further asserts that the only connection between this lawsuit and Utah is the fact that Capstone's corporate hub is currently located in Ogden, Utah and perhaps that certain billing occurred at that location during the relevant timeframe. (Docket No. 8, at 6). Green Wave suggests that "the underlying facts occurred primarily in California," where it received shipments of the allegedly

5

tainted ingredient and processed it for eventual sale to Capstone. (*Id.* at 6–7). Capstone acknowledges that the underlying facts of this lawsuit touch several states, including California, but nonetheless argues that "the princip[al] Capstone witnesses, documents, and other evidence [are] centered in Utah and . . . the material elements of Capstone's claims arose primarily in Utah." (Docket No. 14, at 15). While some of Capstone's so-called "material elements" are ultimately irrelevant to this analysis, the court still believes that Capstone has the better argument.

It is undisputed that all of the allegedly adulterated product is now sitting in a warehouse in Ogden, Utah and that the vast majority of Capstone's potential witnesses now reside in Utah, including most of Capstone's management staff and many, if not all, of the employees involved in the processing, testing, and eventual retention of the adulterated product.[3] The court finds that the undisputed presence of material physical evidence and relevant witnesses in Utah forms a "significant connection" with the forum for purposes of § 1404(a) analysis. *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168; *Corel Software*, 2016 WL 782249 at *2 (holding that the presence of "critical witnesses whose testimony is pertinent to this action" was a "significant connection" to the plaintiff's chosen forum).

Nevertheless, Green Wave protests that the product and witnesses were moved to Utah several months *after* the events at issue in this lawsuit occurred. Thus, Green Wave reasons, "[t]he fact that some evidence may now, after the fact, reside in Utah does not 'constitute a

---

[3] Additionally, as Capstone is quick to point out, "[a]ll of the records, documents, evidence, and accounting system[s] that support[] Capstone's damages claims—including . . . [documentation regarding] orders with [Capstone's] Colorado customer MusclePharm—exist[] in Utah. Witnesses speaking to these issues also reside in Utah." (Docket No. 14, at 16). While much of the documentation may be easily transmitted between forums electronically, *see Corel Software, LLC v. Microsoft Corp.*, 2:15-cv-00528-JNP-PMW, 2016 WL 782249, at *3 (D. Utah Feb. 26, 2016) (unpublished), the presence of such documentation and especially witnesses with information regarding potential damages in Utah nonetheless reinforces the court's conclusion that Utah has a "material relation or significant connection" to the facts underlying this case, *see Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168.

substantial act out of which this case arises.'" (Docket No. 8, at 7 (quoting *Premier Grp. Inc. v. Bolingbroke*, No. 15-cv-01469-PAB-CBS, 2015 WL 4512313, at *10 (D. Colo. Jul. 27, 2015) (unpublished)). Green Wave misunderstands the reasoning behind the Tenth Circuit's insistence that "the facts giving rise to the lawsuit" bear some "material relation or significant connection to the plaintiff's chosen forum." *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168.

The Tenth Circuit apparently drew this principle from *Cook v. Atchison, Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993). That case, in turn, drew the principle from a line of cases in the Second Circuit's Eastern and Southern Districts of New York. *See, e.g.*, *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 990 (E.D.N.Y. 1991). A review of these cases plainly indicates that this principle, like all other factors considered in § 1404(a) analysis, is meant to facilitate effective discovery, efficient trial practice, and the appropriate application of local law. Specifically, many of these cases recognized that pertinent evidence, witnesses, and locations are more likely to be found where the events underlying the lawsuit actually occurred. *See, e.g.*, *Cain v. N.Y. State Bd. of Elections*, 630 F. Supp. 221, 227 (E.D.N.Y. 1986) ("[W]hile [the court] respects Fahy's right as a plaintiff to file suit in a forum of his choosing . . . [t]he [c]ourt fails to see how judicial proceedings in a district outside that in which the parties, witnesses, and sources of proof may be found, and in which the cause of action arose, serve the general interests of justice . . . ."); *Duplan Corp. v. Deering Milliken, Inc.*, 324 F. Supp. 102, 104–05 (S.D.N.Y. 1970) (explaining that New York had little connection to the facts underlying the case, and that "the trier of facts might be aided by a view of the machines [at issue] in South Carolina"); *Fitzgerald v. Westland Marine Corp.*, 369 F.2d 499, 502 (2d Cir. 1966) ("New York has little connection with the accident which occurred off the coast of Alaska. In all probability,

the district court would have to interpret Japanese and Canadian law in order to determine the liability of [certain defendants], and all of the deceased crewmen . . . are foreigners.").

With this background in mind, it is clear that the "little weight" sometimes accorded to plaintiff's choice of forum is merely a recognition that granting great weight to a plaintiff's choice of forum would be unjust when the forum has nothing at all to offer the parties or the court to aid in resolution of the case—i.e., material witnesses, physical evidence, or physical locations relevant to the facts of the case. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("It is often said that the plaintiff may not, by choice of an inconvenient forum, vex, harass, or oppress the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." (quotations omitted)); *Cain*, 630 F. Supp. at 227 ("[T]he [c]ourt fails to see how judicial proceedings in a district outside that in which the parties, witnesses, and sources of proof may be found, and in which the cause of action arose, serve the general interests of justice . . . ."). And it is equally clear that according some special significance to the forum where relevant events unfolded is pointless if all relevant witnesses and material physical evidence have long since deserted the forum. Instead, a "material relation or significant connection" exists in whatever forum can, through the presence of relevant witnesses, evidence, or locations, aid the parties or the court in resolution of the case. Thus, the fact that many witnesses and evidence relevant to this case were located in Tennessee at the time the underlying dispute arose does not somehow lessen the "significant connection" those witnesses and evidence currently have to Utah.

Green Wave urges that "Capstone cannot manufacture venue based on actions subsequent to the relevant timeframe in dispute." (Docket No. 8, at 7). In essence, Green Wave argues that Capstone should not be able to force it to litigate in this forum by moving relevant witnesses and

8

evidence here. This argument could have some force if there were any indication that Capstone somehow acted in bad faith by shuttering its facilities in Tennessee and relocating its business operations entirely to Utah. In reality, however, there is no hint of bad faith in Capstone's recapitalization. Indeed, the idea that Capstone would upend its entire corporate structure, divest itself of facilities, relocate management, staff, and all of its product to a new forum to somehow "manufacture" venue borders on absurd. Absent any inkling of obvious chicanery, the presence of material witnesses and physical evidence in Utah constitutes a "significant connection" to the forum regardless of when the witnesses and evidence arrived.

Green Wave also argues that other states, especially California, are more substantially connected to this lawsuit than Utah. The court agrees that at least California and New Jersey have a material relation and a significant connection to the facts giving rise to this lawsuit. The alleged breach likely occurred in those locations when Green Wave delivered the disputed ingredient to Capstone. Moreover, Green Wave presumably received the ingredient from China and processed it for sale in those locations. Thus, the bulk of witnesses and physical evidence that Green Wave may use to rebut the claim that the disputed ingredient was tainted when it left its facilities are more than likely present in those locations. But the inquiry at this stage is not whether some other forum has a *greater* material relation or significant connection—it is whether this particular forum has at least *some* "material relation or significant connection" to "the facts giving rise to the lawsuit." *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168. And, given the presence of a substantial number of relevant witnesses, related financial documentation, and the whole stockpile of disputed product in Utah, the court cannot say that this forum lacks a "material relation or significant connection" to the facts of this case. *See id.*; *Butikofer v. Nygren*, No. 2:16-cv-00610-DN, 2016 WL 7190556, at *4 (D. Utah Dec. 12, 2016) ("Each of these other venues

may have a significant connection to the operative facts, but this does not diminish the material connection [to] Utah.").

Because Capstone resides in this forum and the forum bears a "material relation or significant connection" to the facts of this case, the court finds that Capstone's choice of forum is entitled to great weight. *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168. This factor therefore weighs heavily against transfer.

## II.     ACCESSIBILITY OF WITNESSES AND SOURCES OF PROOF

The court finds that the second factor—the accessibility of witnesses and sources of proof—is essentially neutral, weighing neither for nor against transfer. The Tenth Circuit has indicated that "[t]he convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169 (internal quotations omitted) (quoting *Cook*, 816 F. Supp. at 669). In order to establish that the inconvenience to material witnesses weighs in favor of transfer, "the movant must (1) identify the witnesses and their locations; (2) 'indicate the quality or materiality of their testimony' and (3) 'show that any such witnesses [are] unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary.'" *Id.* (alterations in original omitted) (quoting *Scheidt*, 956 F.2d at 966).

Here, Green Wave argues that "the majority of . . . relevant evidence will likely consist of witnesses and documents in California." (Docket No. 8, at 7). Specifically, Green Wave explains that its employees received, stored, and processed most of the disputed ingredient in its California facilities. Further, Green Wave identifies approximately ten potentially relevant witnesses—including Green Wave's CEO, shipping manager, warehouse manager, and several quality control supervisors, among others—who all reside in California. Capstone responds that

the stockpile of allegedly adulterated product is currently stored in Utah. Further, Capstone notes that Green Wave's witness list fails to account for all of the material witnesses that Capstone will likely call. The vast majority of Capstone's potential witnesses—a group numerically and materially equivalent to that proffered by Green Wave—reside in Utah, including Capstone's management staff, its head of quality control, and certain warehouse personnel who oversaw the transportation, testing, and storage of the allegedly adulterated product.

The court finds that these competing witness and evidence lists are essentially in equipoise, significantly undercutting Green Wave's argument for transfer between forums. By the court's estimation, any transfer would "merely shift[] the inconvenience" from Green Wave to Capstone. *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1167. Moreover, Green Wave has failed to demonstrate that any of its employees—the great bulk of its potential witness list—are unwilling to attend trial or participate in discovery. *See Butikofer*, 2016 WL 7190556, at *4–*6 (finding that this factor weighed against transfer where movant had failed to demonstrate that material witnesses were unwilling to travel to Utah for trial). And, since these employee witnesses are ostensibly within Green Wave's control, "issues of compulsory process are of less significance" in the court's analysis. *See Edizone, LLC v. Asia Focus Int'l Grp., Inc.*, 196 F. Supp. 3d 1222, 1231 (D. Utah 2016) (citing *Emp'rs Mut. Cas. Co.*, 618 F. Ed at 1168); *Lewis v. Grote Indus. Inc.*, 841 F. Supp. 2d 1049, 1054 (N.D. Ill. 2012) ("[C]ourts are less concerned about the burden that appearing at trial might impose on witnesses who are employees of parties because it is presumed such witnesses will appear voluntarily." (alterations and quotations omitted)). Thus, Green Wave has failed to demonstrate any evidence or witness-related inconvenience that would outweigh the corresponding inconvenience to Capstone if this case were tried in California.

The court notes that Green Wave lists a handful of potential witnesses who reside in China. These witnesses are employees of Chang Zhou, a Chinese supplier, and Gulin Bio, apparently a go-between for Green Wave and Chinese suppliers and shippers. Green Wave avers that these employees "likely have information about quality control efforts undertaken with respect to the [ingredient] before it [was] shipped to the United States." (Docket No. 8, at 9). While this is a slim showing of materiality, it is nonetheless clear that some information regarding the origins of the disputed ingredient will likely be necessary to support Green Wave's theory of the case, i.e., that the ingredient was never tainted with DMBA or otherwise adulterated. Green Wave insists that it would be unfair and prejudicial to be forced to rely on deposition testimony for these relevant witnesses, but elaborates very little on why this would be the case. Also without much elaboration, Green Wave suggests that it "is . . . more likely to be able to secure testimony from the Chin[a]-based witnesses if this dispute proceeds in California." (*Id.*).

The court is not persuaded by these arguments. Beyond bald assertions of unfairness, Green Wave has not proffered any discernible reason why reliance on deposition testimony for these witnesses would be prejudicial to its case. Green Wave has also not accounted for the fact that Capstone will likely be forced to rely on deposition testimony for certain witnesses in Colorado, Tennessee, and Kentucky to support certain aspects of its claims. As in any interstate litigation, "there will be some witnesses who are inconveniently located" and some witnesses who may only be reached through deposition. *See Cmty. Television*, 997 F. Supp. 2d at 1207. Green Wave has not demonstrated that these witnesses are so crucial as to necessitate a change in forum just to accommodate them. Additionally, Green Wave has failed to address the very real possibility that these witnesses need not travel at all in order to testify. Video-conference

testimony is easily arranged for either deposition or trial, allowing for relatively inexpensive live testimony even when the witness is not physically present in the courtroom. In sum, the needs of potential witnesses residing in China do not tip this factor in Green Wave's favor.

All told, Green Wave has failed to demonstrate that the relative accessibility of material evidence and witnesses in California is so substantial as to justify a transfer. Instead, the undisputed presence of material physical evidence and witnesses in both Utah and California indicates that this factor is essentially neutral.

### III. COSTS OF MAKING NECESSARY PROOF

The court finds that the third factor—the relative costs of making necessary proof—is also essentially neutral. In essence, evaluation of this factor requires the court to weigh the relative costs of discovery and trial in each forum. *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169.

Green Wave argues that the costs of litigating in this forum are "expected to be much greater than if the case was transferred to the Central District of California" because "very few of the witnesses and sources of proof regarding Capstone's claims" are present in Utah. (Docket No. 8, 9–10). As the court has already identified a significant number of material witnesses and a great deal of crucial evidence located in Utah, this argument is plainly unavailing. And Green Wave's particular emphasis on "the expense of having Green Wave representatives and counsel travel periodically to Utah, having to make witnesses available in California, and having to provide time off for current employees to travel to Utah" is equally unpersuasive. (*Id.*). Green Wave has again failed to account for countervailing costs to Capstone of litigation in California. Interstate discovery and travel expenses are inevitable in this case, where the claims touch multiple states and may even cross international waters. There is simply no indication that the cost or inconvenience to Green Wave of a case tried in Utah is any greater than that which would befall

Capstone if the case were tried in California. *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169; *Pehr v. Sunbeam Plastics Corp.*, 874 F. Supp. 317, 321 (D. Kan. 1995) ("There is not sufficient evidence . . . to find that the potential costs and inconvenience to Sunbeam of litigating this matter in Kansas so outweigh the corresponding costs and inconvenience to plaintiff of litigating the matter in Indiana that a transfer is justified."); *Edizone*, 196 F. Supp. 3d at 1231 ("AFIG has not shown how the expense and inconvenience for Edizone to litigate in California would be any less than AFIG's inconvenience in litigating in Utah."). Once more, "[m]erely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue." *Scheidt*, 956 F.2d at 966.

At oral argument, counsel for Green Wave did briefly argue that the relative ability of Capstone and Green Wave to carry on protracted litigation in a foreign forum should also be considered in this court's §1404(a) analysis. Citing § 1404(a)'s focus on "the interest of justice," counsel emphasized that Green Wave is a "closely held family business" with limited financial resources and alleged that Capstone is a substantially larger corporate entity with significantly more resources it can dedicate to out-of-state litigation. Although the "relative wealth of the parties" may be a relevant consideration in matters of venue, *see, e.g.*, *Recovery Processes Int'l, Inc. v. Hoechst Celanese Corp.*, 857 F. Supp. 863, 866 (D. Utah 1994), there is little evidence in the record (beyond the bare assertion of Green Wave's counsel) to indicate a significant disparity between the resources of the parties. Instead, it appears from available evidence that Green Wave—whether closely held or not—is a sophisticated entity with an expanding coast-to-coast business model and significant transnational connections. Thus, as far as the available evidence goes, it seems that any disparity of resources between the parties would not cause undue prejudice to Green Wave. *See Arrow Elecs., Inc. v. Ducommun Inc.*, 724 F. Supp. 264, 266

(S.D.N.Y. 1989) ("While plaintiff is a substantially larger corporation, defendant has made no showing that defending this action in this District would be unduly burdensome."); *cf. Peters v. Graber Indus., Inc.*, Civ. A. No. 91-1507-B, 1992 WL 420915, at *2 (D. Kan. Dec. 30, 1992) (unpublished) (finding that "the interests of justice" weighed in favor of plaintiff where plaintiff was an individual and defendant was a multi-million dollar subsidiary of a large corporation). And even if there were more evidence that Capstone is better-positioned to litigate out of state than Green Wave, the court would be hesitant to weigh that factor more heavily than Capstone's choice of forum given the Tenth Circuit's admonition that "the plaintiff's choice of forum should rarely be disturbed." *Scheidt*, 956 F.2d at 965; *see also Gulf Oil*, 330 U.S. at 508 ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.").

Insofar as there is tangible evidence of potential litigation costs in this matter, they appear to be essentially in equipoise. As a result, the court finds that this factor weighs neutrally.

IV. **DIFFICULTIES THAT MAY ARISE FROM CONGESTED DOCKETS**

The court finds that the fourth factor—the impact of court congestion on the litigation—is also neutral. "When evaluating the administrative difficulties of court congestion, the most relevant statistics are the mean time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169.

Here, Green Wave argues that the District of Utah is far more heavily congested than the Central District of California, indicating that transfer to that forum is appropriate. However, Green Wave has only cited two of the four relevant statistics to the court with no explanation as to why they should be dispositive or weigh more heavily than the other statistics the Tenth

15

Circuit has identified as "most relevant." *See id.* Green Wave's failure to properly address all of the relevant statistics means that it has not carried its burden to demonstrate that this factor weighs in its favor.

While this failure alone is sufficient to reject Defendant's arguments outright, the court's own independent review of the relevant statistics indicates that the statistics that Defendant failed to cite are essentially neutral or weigh against transfer to the Central District of California.[4] Accordingly, even if Green Wave had cited all of the relevant statistics as required to carry their burden, this factor would likely still be a wash. Though not dispositive, the court also notes that Green Wave has not made any persuasive argument that these district-wide statistics are reflective of this specific court's speed and efficiency. *See Cmty. Television*, 997 F. Supp. 2d at 1207 ("[T]he district-wide statistics are not entirely relevant.").

Nevertheless, given the significant discrepancies between the District of Utah and the Central District of California in median time from filing to disposition and from filing to trial, the court cannot find that this factor weighs *against* transfer. At the same time, the court also cannot find that it weighs in *favor* of transfer because the burden is on Green Wave to demonstrate that this factor actually supports a transfer. Instead, the court finds that this factor weighs neutrally.

---

[4] Defendant failed to address two relevant statistics: (1) total pending cases per judge and (2) average weighted filings per judge. As to the first statistic, the total pending cases per judge as of December 2016 was 466 cases in the District of Utah and 449 cases in the Central District of California. *See* Fed. Court Mgmt. Statistics, U.S. Dist. Courts—Nat'l Judicial Caseload Profile (Dec. 31, 2016), *available at* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/12/31-1. The difference of seventeen cases between these totals appears to be essentially negligible but may weigh ever so slightly in favor of transfer.

As to the second statistic, the average weighted filings per judge as of December 2016 was 480 in the District of Utah and 558 in the Central District of California. *Id.* The substantial difference here between total weighted filings—78 total filings—weighs in favor of this forum and against transfer.

## V. BALANCING OF RELEVANT FACTORS

Both parties agree that the remaining factors are either irrelevant or neutral in this case. The court agrees and proceeds to a balancing of the factors evaluated above. As all of the factors plainly weigh heavily against transfer or are neutral, the court must deny Green Wave's request for transfer. The court notes that the outcome of this balancing would be the same even if the court were to accord significantly less deference to Capstone's choice of forum—even a "little weight" will tip the scales when all other factors are neutral. *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168.

## **CONCLUSION**

Based on the foregoing, the court concludes that Green Wave's Motion to Change Venue (Docket No. 8) must be DENIED. The case will proceed in this forum as originally filed.

IT IS SO ORDERED.

Signed this 23rd day of June, 2017.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge